# Richmond

DR. A. M. OWEN V. R. H. REYNOLDS.

February 20, 1939.

Record No. 2016.

Present, All the Justices.

The opinion states the case.

*Carter & Williams* and *Langhorne Jones,* for the plaintiff in error.

*N. E. Clement* and *W. G. Vansant,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

R. H. Reynolds, petitioner in the court below, asked that a writ of *quo warranto* be awarded and prosecuted in his name against Dr. A. M. Owen to the end that Dr. Owen's right to serve as a member of the County School Board of Pittsylvania county from Staunton River district be determined. That we are to decide and nothing more.

On July 31, 1926, Frank Marshall, C. D. Bryant and W. P. Coles were appointed members of the School Trustee Electoral Board for Pittsylvania county for a four-year term, beginning August 1, 1926, and ending August 1, 1930.

All three of these gentlemen promptly qualified. W. P. Coles afterwards resigned, and H. E. Spessard was appointed to fill out his unexpired term. He, too, qualified. On July 24, 1930, these three gentlemen were reappointed for a four-year term, beginning on August 1, 1930. None of them qualified under this reappointment or at any other time, nor were they thereafter reappointed, although they continued to discharge the duties of their office until January 10, 1938, at which time the judge of the Circuit Court of Pittsylvania county, in vacation, on January 10, 1938, appointed C. D. Bryant, Dr. L. C. Womack and V. A. Motley members of the board for the unexpired term ending August 1, 1938. These last named gentlemen qualified under this appointment on January 11 and 13, 1938.

For convenience, we shall speak of these two boards as the old and the new board.

Why the old board failed to qualify for the term ending August 1, 1934, and why they were not reappointed, we do not know. So far as the record shows, matters drifted, and the necessity for reappointment or for requalification appears to have been overlooked. Be that as it may, it did continue to act without let or hindrance until January 10, 1938. Such was the situation on December 2, 1937, when it met in the office of C. D. Bryant in Danville, Virginia. The purpose of that meeting was to appoint a successor to W. W. Moses, then dead, and who had been the member of the school board from Staunton River magisterial district in Pittsylvania county. At that meeting recommendations and applications were considered, and, upon their consideration, Dr. A. M. Owen was selected to fill this vacancy and for the unexpired term of Mr. Moses, which ran to June 30, 1940. The validity of that appointment is here under attack.

■ If the old board was in office *de jure* at the time of Dr. Owen's appointment, of course his appointment stands; if it was a *de facto* board, its appointments are also valid. Code, section 293. All that was done purports to have been done under authority of Code, section 653. Provision is

there made for the school trustee electoral board. This electoral board is empowered to appoint members of the county school board to consist of one member for each school district in the county.

The school board is to be appointed in this wise:

"Before any appointment is made by the electoral board it shall give notice, by publication for two successive weeks, in a newspaper having general circulation in such county of the time and place of any meeting for the purpose of appointing the members of the county school board."

If vacancies occur, provisions are made for that contingency also. "Any vacancy in the county school board shall be filled by appointment by the trustee electoral board."

By act approved March 26, 1928, Acts of the General Assembly 1928, ch. 471, p. 1203, it is provided that: "The present trustee electoral board and county school boards now in office, shall continue to hold office until their successors have been elected and qualified." This provision reappears in Acts of Assembly 1930, ch. 412, p. 885; in the Acts of 1932, ch. 117, p. 124, and in the Acts of 1936, ch. 314, p. 502.

The trustee electoral board and its members are not merely authorized to continue to discharge the duties of their office but by the very language of the statute which gives this board being continue to hold office until their successors have been appointed and qualified; moreover, section 33 of our Constitution declares that "all officers, elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified." Plainly under legislative mandate, the members remain in office, and under constitutional mandate, they are not merely empowered but are directed to discharge its duties after their terms of service have expired and until their successors have qualified.

The period between the expiration of an incumbent's term and the qualification of his successor is a part of the term itself. *Chadduck* v. *Burke*, 103 Va. 694, 49 S.

E. 976. A *de facto* officer may be ousted in direct proceedings against him; a *de jure* officer can not. *People* v. *Staton*, 73 N. C. 546, 21 Am. Rep. 479; 22 R. C. L. 589. Certainly the old board could not have been ousted until its successor had been appointed and qualified; until then it held over. The duties which it discharged were discharged by authority of the Constitution, and since performed under constitutional mandate, they were performed *de jure*. Moreover, as we have seen, the statute says in express terms that they do continue to hold office. If this was a board *de jure*, its acts stand; and if it was a board *de facto*, its acts also stand because the Legislature has so declared. Code, section 293.

█ The definition of an officer *de facto* has been given time and again. Lord Ellenborough in *The King* v. *Bedford Level*, 6 East. 356, said that he is "one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law."

█ In *Griffin's Ex'r* v. *Cunningham*, 20 Gratt. (61 Va.) 31, we said:

"An officer *de facto* is one who comes in by the power of an election or appointment, but in consequence of some informality or omission, or want of qualification, or by reason of the *expiration of his term of service,* cannot maintain his position when called upon by the government to show by what title he claims to hold his office. He is one who exercises the duties of an office *under claim and color of title,* being distinguished, on the one hand, from a mere usurper, and on the other, from an officer *de jure*. Ib.; 5 Eng. C. L. R. 278; [*Wilcox* v. *Smith*], 5 Wend. R. [231], 234."

█ So far as Dr. Owen is concerned, the results are the same whether the old board went out of office on January 10, 1938, the date of the appointment of the new board, or on August 1, 1938, when the hold-over term would have come to an end. Since January 10, 1938, the old board has neither functioned nor attempted to function. The new

board then went into office, and no one has questioned its authority.

It is contended that all electoral school board meetings must be advertised, but, as we have seen, Code, section 653, requires this only when the school board is to be named. There is no such requirement where vacancies are to be filled.

There was nothing furtive about the meeting in Danville. Recommendations and applications were before it and duly considered. No error can be predicated upon the place and the formalities of the election.

The argument in this case has taken a wide range, but the decision has been confined to the single issue presented.

We hold that the old board was a board *de jure* when Dr. Owen was elected—made so by constitutional and statutory provisions too plain to be misunderstood. Moreover, beyond peradventure, it was at least a board *de facto*.

The judgment of the lower court should be reversed and the writ dismissed, together with final judgment for Dr. A. M. Owen.

*Reversed and final judgment.*